**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **KENNETH D. MURENA**, in his capacity as court-appointed Receiver of Drive Planning, LLC, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No._____ |
| **EMBRY DEVELOPMENT COMPANY, LLC,** | : : : | |
| Defendant. | : : | |
| _____ | : | |

## <u>ANCILLARY COMPLAINT</u>

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") of Drive Planning, LLC, acting pursuant to this Court's Order Appointing Receiver entered in the above-captioned enforcement action and pursuant to Fed. R. Civ. P. 66 sues Embry Development Company, LLC ("Embry" or "Defendant"), for actual and constructive fraudulent transfers under the Georgia Uniform Voidable Transactions Act, O.C.G.A. §§ 18-2-70, *et seq.* ("GUVTA"), and unjust enrichment under Georgia common law, to avoid, recover, and disgorge the approximately $6,690,500.00 that the Defendant received in the form of improper transfers from the Drive Planning Ponzi scheme:

## I.   INTRODUCTION

From 2020 through 2024, Russell Todd Burkhalter, through the Receivership Entity Drive Planning, LLC ("Drive Planning"), operated a Ponzi scheme that raised approximately $380 million from roughly 2,400 investors, resulting in at least $228 million in net investor losses. The U.S. Securities and Exchange Commission (the "SEC") initiated an enforcement action styled *SEC v. Drive Planning, LLC, et al.*, Case No. 1:24-cv-03583-VMC (the "SEC Action"), pending in this District.

The Court presiding over the SEC Action appointed the Receiver to marshal, preserve, and administer Drive Planning's assets, including litigation claims to recover investor funds improperly or illegally paid to third parties. The Receiver's forensic investigation revealed that approximately $6,690,500.00 in investor funds was transferred from Drive Planning to Embry Development Company, LLC (the "Transfers"). A schedule of the Transfers is attached as **Exhibit A**.

Embry is a Georgia-based real estate firm that purports to concentrate on land development, construction, and consulting. Embry received substantial funds from Drive Planning which it is believed were used in connection with Embry's real estate development opportunities, including for the acquisition of properties and contemplated construction projects. Despite receiving nearly $6.7 million in investor funds, Embry failed to provide Drive Planning with reasonably equivalent value in

exchange, and without taking such Transfers in good faith, thereby unjustly enriching itself at the expense of Drive Planning and its defrauded investors.

The Receiver engaged in continuous and ongoing good-faith efforts to resolve these issues and recover the transferred funds without litigation, but those efforts were unsuccessful. As a result, Embry has retained the full benefit of millions of dollars in investor funds while providing no corresponding value to the Receivership Estate.

This ancillary action furthers the Receiver's duty to recover assets of Drive Planning and to return those assets to the investors who collectively lost more than $228 million as a result of the fraudulent transfers to, among others, the Defendant.

## II.    PARTIES

1.    Plaintiff, Kenneth D. Murena, is the court-appointed Receiver of Drive Planning, LLC, appointed pursuant to the Order Appointing Receiver entered in the SEC Action (the "Appointment Order").  *See* Sec Action at ECF No. 10. Plaintiff maintains his principal office in Miami, Florida.

2.     Defendant, Embry Development Company, LLC is a Georgia limited liability company with its principal place of business in Atlanta, Georgia.

## II.  JURISDICTION AND VENUE

### A.      Subject Matter Jurisdiction

3.      This Court has subject matter jurisdiction over this ancillary action by virtue of the Appointment Order, and this action is incidental to the preservation, collection, and distribution of assets of the Receivership Estate.

4.      "Courts have long recognized a federal court's supplemental jurisdiction over actions related to a receivership established in federal court."[1] This Court has subject-matter jurisdiction over the state-law claims asserted in this complaint in this ancillary action pursuant to 28 U.S.C. §§ 754, 1367 because those claims are ancillary to the SEC Action, *SEC v. Drive Planning, LLC*, *et al.*, Civ. Action No. 24-cv-03582-VMC (N.D. Ga.), over which the Court in this district has jurisdiction pursuant to 28 U.S.C. § 1331.

5.      The SEC Action is within the jurisdiction of the federal court in this district under 28 U.S.C. § 1331 and this ancillary action is in furtherance of the Receiver's duties under the Appointment Order entered in the SEC Action.

### B. Personal Jurisdiction

6.      This Court has personal jurisdiction over Defendant because Defendant conducts business in the Northern District of Georgia and conducted business with

---

[1] *Mandel v. Howard*, No. 11-23620-Civ-COOKE, 2012 U.S. Dist. LEXIS 43948, at *7 (S.D. Fla. Mar. 28, 2012) (collecting cases).

Drive Planning, which was operating, conducting, engaging in, and carrying on a fraudulent business or venture in, among other locations, the Northern District of Georgia.

7.    Venue is proper in this district pursuant to 28 U.S.C. §§ 754, 1692 because the SEC Action is pending in this district.

8.    All conditions precedent to the bringing of this action have been performed, waived, satisfied, or have otherwise occurred.

## III.    GENERAL FACTUAL AND PROCEDURAL BACKGROUND

### The SEC Commences its Enforcement Action

9.    On August 13, 2024, the SEC filed its complaint ("SEC Complaint") against Drive Planning and Burkhalter and various relief defendants, thereby commencing the SEC Action. *See* SEC Action at ECF No. 1.

10.    The SEC Action arises out of the massive Ponzi scheme orchestrated by Drive Planning and its principals. From 2020 through 2024, Drive Planning misled more than 2,400 investors into investing approximately $380 million into a fraudulent real estate and tax lien investment scheme having many of the attributes of a classic Ponzi scheme.

11.    Simultaneously, the SEC obtained preliminary injunctive relief, and other emergency relief. *See id.* at ECF Nos. 2, 11, 16.

5

12.    The SEC, along with filing the SEC Complaint, sought and obtained appointment of the Receiver through the Appointment Order. *See id.* at ECF Nos. 2, 10.

13.    The Appointment Order created a receivership estate ("Receivership Estate") comprised of all of the assets of Drive Planning, whether those assets were owned directly by Drive Planning or were transferred to or otherwise in the possession of third parties subject to claims by the Receivership Estate to avoid, recover, and disgorge the improper transfers made by wrongdoers. *See id.* at ECF No. 10.

14.    The Appointment Order authorizes the Receiver to investigate and prosecute claims against individuals and entities who/that improperly received funds from Drive Planning pre-receivership. *See id.* Further, pursuant to the requirement in the Appointment Order, the Receiver sought and obtained authority from the appointing court to commence this action asserting the claims set forth herein. *See id*. at ECF Nos. 229, 234.

15.    Drive Planning's cash flow relied entirely on a continuous influx of new investor money, which was used to satisfy obligations owed to earlier investors, to fund commissions and bonuses of Drive Planning's agents, and to support the personal lifestyles of its principals.

16.     By its very structure, Drive Planning was insolvent from inception. Each time Burkhalter and his agents accepted a new "investment," they simultaneously created a liability (an obligation to repay that investment and deliver the returns falsely represented) without any corresponding legitimate asset or source of revenue.

17.     Internally, Drive Planning's financial records reflected this insolvency where investor liabilities vastly exceeded assets. There was no independent source of income sufficient to sustain operations, let alone repay investors the hundreds of millions of dollars they were promised.

18.     Accordingly, at all relevant times, Drive Planning was operating in a state of insolvency and with actual intent to hinder, delay, or defraud its creditors, rendering each transfer in furtherance of the fraud voidable under Georgia law.

## IV.   LEGAL BASIS FOR THE RECEIVER'S CLAIMS

### *The Receiver Has Standing to Bring Fraudulent Transfer and Unjust Enrichment Claims*

19.     The Receiver has standing to assert claims against third parties who/that received funds, caused damage, or who/that are in possession of assets belonging to the Receivership Estate. *See* 28 U.S.C. §§ 754 and 1692; *Scholes v. Lehman*, 56 F.3d 750 (7th Cir. 1995).

7

20.    Therefore, the Receiver has standing to recover the nearly $6.7 million received by Defendant as the transfer constitutes an avoidable and recoverable fraudulent transfer and unjust enrichment to Defendant.

21.    The Court's removal of Burkhalter and his accomplices, appointment of the Receiver, and creation of the Receivership Estate and Receivership Entity Drive Planning, cleansed the Receivership Estate and Receivership Entity Drive Planning such that the Receiver has standing to bring claims to recover the payments pre-Receivership Entity Drive Planning made to Defendant.

## V.  PAYMENTS TO DEFENDANT SUBJECT TO AVOIDANCE, RECOVERY, AND DISGORGEMENT

22.    The Receiver sues Defendant in this ancillary action to avoid and recover transfers in the total amount of $6,690,500 that Drive Planning made to them when Drive Planning was running its Ponzi scheme from before 2020 through August 12, 2024.

23.    The Receiver will use funds recovered in this action to make an equitable distribution to defrauded investors who suffered net losses.

## VI.  CLAIMS FOR RELIEF

## COUNT 1 – ACTUAL FRAUDULENT TRANSFER UNDER GUVTA

24.    The Receiver sues Defendant and adopts, realleges, and incorporates paragraphs 1 through 23 into Count 1.

25.    As set forth above, from before 2020 through August 12, 2024 Drive Planning operated a Ponzi scheme and, as such, was insolvent and acting with actual intent to hinder, delay, or defraud creditors at all relevant times.

26.    From 2020 to 2024, Drive Planning transferred approximately $6,690,500.00 in investor-derived funds to Embry.

27.    Defendant did not provide Drive Planning with any goods, services, or other value at any time, including in exchange for the Transfers.

28.    Embry did not supply goods or value to Drive Planning commensurate with the amounts Defendant received from Drive Planning. Instead, the transfers constituted a unilateral diversion of investor funds for Embry's benefit and for the operation of Embry's independent real estate business, to the direct detriment of Drive Planning and its defrauded investors.

29.    Defendant did not act in "good faith" when it received, retained, and used the transferred funds. Defendant knew the funds originated from Drive Planning and accepted and expended those funds for purposes unrelated to any legitimate obligation owed to Drive Planning. Further, despite demand by the Receiver for the return of such funds, Defendant failed and refused to return or account for the Transfers. Defendant's knowing retention and continued use of investor funds under these circumstances demonstrates a lack of good faith.

9

30.     Drive Planning made the foregoing transfers in furtherance of its Ponzi scheme, not for reasonably equivalent value, and with actual intent to hinder, delay, or defraud creditors, including defrauded investors, within the meaning of O.C.G.A. § 18-2-74(a)(1).

31.     Under the Ponzi-scheme presumption, transfers made in furtherance of a Ponzi scheme are deemed to have been made with actual intent to defraud creditors. The Receiver will establish this presumption through Mr. Burkhalter's guilty plea agreement in the pending criminal action against him, expert testimony, and Drive Planning's books, records, and cash-flow analyses.

32.     The operative intent for purposes of O.C.G.A. § 18-2-74(a)(1) is the transferor's intent (Drive Planning's), not the transferees.

33.     Embry received the benefit of transferred funds (including payment of medical and other personal expenses) and are therefore liable within the meaning of O.C.G.A. § 18-2-78(b)(1)(B).

34.     As a direct and proximate result of the foregoing transfers, Drive Planning and the Receivership Estate were injured through the dissipation of assets that otherwise would have been available for investors and other creditors.

35.     Pursuant to O.C.G.A. § 18-2-74(a)(1) and the remedies provided by O.C.G.A. § 18-2-77, the Receiver is entitled to avoid and recover the transfers and

10

obtain judgment against Embry to the extent of the value it received. *See* O.C.G.A. § 18-2-78(b)(1).

36.   The Receiver further seeks all other relief authorized by O.C.G.A. § 18-2-77, including attachment, injunction, or other provisional remedies as necessary to prevent further dissipation and to effectuate recovery.

37.   The Receiver is entitled to prejudgment interest on the avoided transfers from the date of each transfer, together with costs and such other and further relief as the Court deems just and proper. *See, e.g.*, O.C.G.A. § 51-12-4.

Wherefore, the Receiver requests the entry of judgment against Embry avoiding the transfers and awarding the Receiver recovery of the Transfers, prejudgment interest, costs, and such additional legal or equitable relief as the Court deems just and proper.

## COUNT 2 – CONSTRUCTIVE FRAUDULENT TRANSFER UNDER GUVTA

38.   The Receiver sues Defendant and adopts, realleges, and incorporates paragraphs 1 through 23 into Count 2.

39.   As described above, Drive Planning transferred approximately $6,690,500.00 in investor-derived funds to Embry.

40.   Embry used the transferred funds for its own benefit, including funding its independent business operations and purported development activities, rather

than for the benefit of Drive Planning or its investors, and without providing reasonably equivalent value in exchange for such Transfers.

41.     The Receiver seeks to avoid and recover $6,690,500.00 in transfers made by Drive Planning to or for the benefit of Defendant pursuant to the constructive fraudulent transfer provisions of the GUVTA, including O.C.G.A. § 18-2-74(a)(2) and § 18-2-75.

42.     Drive Planning operated as a Ponzi scheme from before 2020 through August 2024 and was insolvent at all relevant times. Each transfer made to Defendant occurred after Drive Planning had incurred obligations to investors that it could not satisfy.

43.     Drive Planning made the transfers to Defendant while insolvent and without receiving reasonably equivalent value in exchange.

44.     At the time of each transfer, Drive Planning either intended to incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due, in violation of O.C.G.A. § 18-2-74(a)(2).

45.     The Defendant did not provide reasonably equivalent value to Drive Planning in exchange for the $6,690,500.00 in transfers it received. The funds were not repayment of any legitimate debt, nor did they satisfy any valid obligation owed by Drive Planning.

12

46.    Rather, the funds were diverted investor monies yielding no legitimate value to Drive Planning or its investors.

47.    Defendant did not act in "good faith" when Defendant received, retained, and used the transferred funds. Defendant knew the funds originated from Drive Planning, a company with which they had not entered into an agreement for the $6,690,500.00 in transfers. Defendant accepted and expended the funds for purposes entirely unrelated to any legitimate Drive Planning obligation, as reflected by the failure to return any of the millions of dollars provided to them back to Drive Planning. Their knowing and continued use of those funds for non-Drive-Planning purposes, and only for the benefit of Embry, demonstrates a lack of good faith.

48.    Embry directly benefitted from these transfers.

49.    As a direct and proximate result of these transfers, Drive Planning and the Receivership Estate were injured through dissipation of assets that would otherwise have been available for equitable distribution to the investors and other creditors of Drive Planning.

50.    None of the transfers were made for reasonably equivalent value; instead, they represent the wrongful diversion of investor proceeds in furtherance of Drive Planning's Ponzi scheme.

51.    The transfers described herein are avoidable and recoverable from Embry as the initial transferee under O.C.G.A. § 18-2-78(b)(1)(A).

52.    The Receiver is entitled to an award of prejudgment interest on the avoided transfers pursuant to O.C.G.A. § 51-12-4, from the date of each transfer until recovery.

53.    Because the transfers were made while Drive Planning was insolvent and for no reasonably equivalent value, they are voidable and recoverable under O.C.G.A. §§ 18-2-74(a)(2), 18-2-75, and 18-2-78(b)(1)(B).

WHEREFORE, the Receiver requests the entry of judgment against Embry avoiding the Transfers and awarding the Receiver recovery of the Transfers, prejudgment interest, costs, and such other and further relief as this Court deems just and proper.

## *ALTERNATIVE* COUNT 3 – UNJUST ENRICHMENT UNDER GEORGIA COMMON LAW

54.    The Receiver sues Defendant and adopts, realleges, and incorporates paragraphs 1 through 23  into Count 3.

55.    As described above, Drive Planning transferred approximately $6,690,500 in investor-derived funds to Embry, which used those funds to fund Embry's independent business operations.

56.    The Receiver seeks disgorgement of all such funds paid or transferred to or for the benefit of Defendant pursuant to the Georgia common law doctrine of unjust enrichment.

14

57. Drive Planning conferred a substantial benefit upon Defendant in the form of these Transfers, all of which were derived from investor money misappropriated in furtherance of the Drive Planning Ponzi scheme.

58. Defendant received and accepted that benefit, knowing or having reason to know that the Transfers were not legitimate income or consideration for any bona fide obligation owed by Drive Planning.

59. The Transfers were made from investor funds, not from Drive Planning's own legitimate operations or profits, because Drive Planning had no independent source of revenue.

60. Defendant provided no compensation, consideration, or benefit to Drive Planning in exchange for receiving the transferred funds, nor did Drive Planning receive any reasonably equivalent value in return.

61. Defendant should not be permitted to profit from the receipt or retention of these investor-derived funds simply because they were not themselves the originators of the fraud.

62. Defendant has no legitimate claim of entitlement to the $6,690,500 in funds they received directly or indirectly from Drive Planning.

63. Based on these facts, it would be unjust and inequitable for Defendant to retain possession or the benefit of any portion of the misappropriated investor funds received from Drive Planning.

15

64. The Transfers from Drive Planning were not made in exchange for any lawful or legitimate service but represented nothing more than diverted investor funds used by Embry to acquire property and pay personal and business expenses.

65. Funds derived from a Ponzi scheme, such as these, are never received in exchange for value, and Georgia law prohibits a recipient from retaining or profiting from such illegal transactions.

66. No agreement or understanding between Drive Planning and the Defendant under which these funds were transferred is legally enforceable, because the underlying transactions were illegal and contrary to public policy.

67. Defendant should not receive a disproportionate benefit or retain investor funds that rightfully belong to the Receivership Estate and the defrauded investors.

68. These wrongful Transfers directly and proximately injured Drive Planning and the Receivership Estate by depleting its assets and depriving defrauded investors of potential recovery.

69. As a result, Defendant has been unjustly enriched at the expense of Drive Planning and its investors, and in equity and good conscience, must disgorge all funds and benefits received from Drive Planning.

70.    The Receiver is therefore entitled to disgorgement and restitution of the $6,690,500.00 transferred to or for the benefit of Defendant under Georgia's common law of unjust enrichment.

71.    The Receiver is further entitled to an award of prejudgment interest on all amounts owed from the date of each transfer to Embry until recovery.

WHEREFORE, the Receiver requests the entry of judgment requiring Defendant to disgorge all funds and benefits received from or traceable to Drive Planning and awarding the Receiver prejudgment interest, costs, and such other and further relief, legal or equitable, as this Court deems just and proper.

Dated: July 31, 2026.

*Henry F. Sewell*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com
*Local Counsel for Kenneth D. Murena,*
*As Court-Appointed Receiver*

Adriana Pavon
Admitted *Pro Hac Vice* in
Case No. 1:24-cv-03583-VWC
*PHV Admission Forthcoming*
In this ancillary action
Florida Bar Number 1025060
apavon@dvcattorneys.com

17

DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone: (305) 371-3960

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*