IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KENNETH D. MURENA, in his capacity as court-appointed Receiver of Drive Planning, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EMBRY DEVELOPMENT COMPANY, LLC,<br><br>Defendant. | Civil Action No. 1:26-cv-04339-VMC |

**EMBRY DEVELOPMENT COMPANY, LLC'S MOTION TO DISMISS RECEIVER'S ANCILLARY COMPLAINT**

Embry Development Company, LLC ("EDC") moves to dismiss the Ancillary Complaint filed by Kenneth D. Murena, court-appointed Receiver for Drive Planning, LLC ("Drive") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

A receiver is appointed to recover a defrauded estate's assets for the benefit of its victims; this Receiver has turned that charge on its head. Having been installed to claw back the proceeds of Drive's Ponzi scheme, he has sued one of that scheme's victims. EDC is a well-known Atlanta real estate developer whose name and good reputation Drive hijacked to lend a veneer of legitimacy to its fraud. In fact, EDC demanded that Drive stop using its name and sued Drive and its principal Todd

Burkhalter in Fulton County Superior Court before the Receiver was even appointed. The Receiver now seeks $6,690,500.00 on a complaint that pleads no facts about EDC at all: it describes Drive's scheme and Burkhalter's guilty plea at length, but as to EDC offers only a recitation of the statutory elements dressed up as facts and conclusory statements. Stripped of those conclusions, nothing connects EDC to any wrongdoing. To fill the gap, the Receiver relies on a single impermissible inference: because Drive ran a Ponzi scheme and Burkhalter pleaded guilty, every dollar EDC received must be a fraudulent transfer. The law does not permit that leap.

The Receiver asserts claims for both actual and constructive fraudulent transfers under the Georgia Uniform Voidable Transfers Act in Counts I and II, but his Complaint falls woefully short. As a threshold matter, claims to recover the transfers in January and February 2020 are time-barred. As for the remaining transfers, the Receiver fails to plead actual fraudulent transfer with the specificity required by Rule 9(b), and his reliance on the "Ponzi presumption" does not cure the defect. The Receiver pleads constructive fraudulent transfer with bare conclusions as to value and insolvency, ignoring that these transfers serviced promissory-note loans. The Receiver also asserts, in the alternative, a claim for unjust enrichment under Georgia law in Count III. That claim fails too because it is based solely on threadbare conclusions and it is barred by the notes governing the funds. The Receiver ends up highlighting what he tried to omit from his Complaint: EDC gave

value under promissory notes and was itself a victim of Drive. The Complaint should be dismissed in its entirety.

## II. BACKGROUND

Drive operated a Ponzi scheme from 2020 through 2024, orchestrated and implemented by its principal Todd Burkhalter. The Receiver invokes Burkhalter's guilty plea in support of his claims against EDC. (Compl. at 2, ¶¶15-18, 31.) The Receiver alleges that Drive Planning transferred approximately $6,690,500 to EDC between 2020 and 2024 and attaches a schedule of those transfers as Exhibit A. (Compl. at 2, ¶26, Ex. A.) The schedule lists transfers between January 2020 and March 2023. Beyond that schedule, the Complaint says almost nothing about EDC, identifying it only as "a Georgia-based real estate firm" and otherwise reciting the statutory elements — that EDC gave no reasonably equivalent value, did not take in good faith, and knew the funds came from Drive. (Compl. at 2, ¶¶27-29.)

But the Receiver's bare bones assertions intentionally leave out key information of which the Receiver is surely aware and has already put into the public record. Namely, that EDC is a victim of Drive and Burkhalter's fraud. As the Receiver has previously reported to this Court, EDC sued Drive in Fulton County Superior Court in August 2023, while Drive's fraud was still ongoing. *See Embry*

*Development Company v. Drive Planning, LLC and R. Todd Burkhalter*, Fulton County Superior Court, Case No. 2023CV384406 ("EDC Fulton Action").[1]

The pleadings in the EDC Fulton Action provide the factual predicate for the transactions at issue in this case, which the Receiver conveniently leaves out of his Complaint. EDC is engaged in the development and sale of real estate. EDC is owned and operated by James Michael Embry, whose family has been involved in real estate, land development, construction, and banking in Atlanta for over seventy years. The Embry family name is well-known and well-regarded in the Atlanta area. (Ex. 1, EDC Compl. ¶¶6-8.)

Drive and Burkhalter approached EDC to gauge its interest in a joint venture whereby Drive would solicit investors to raise money for EDC projects. In 2020, Drive began soliciting investors with Embry's tacit approval. However, Mr. Embry began receiving reports that Drive had raised considerable capital using EDC's name, which conflicted with the sparse reports EDC was receiving from Drive regarding their joint venture. EDC sent a cease-and-desist letter to Drive and

[1] A copy of EDC's Fulton County complaint is attached as Exhibit 1 ("EDC Complaint"). Courts may consider documents attached to a motion to dismiss provided that the plaintiff refers to the documents in the complaint, the documents are central to the plaintiff's claim, and authenticity is not in dispute. *RAM Hotel Mgmt., LLC v. Hartford Fire Ins. Co.*, 614 F. Supp. 3d 1342, 1345 (N.D. Ga. 2022) (citations omitted). Here, the Ancillary Complaint is replete with references to EDC and Drive's alleged conduct, which is the subject of the EDC Complaint, an official pleading whose authenticity is not in dispute. The Receiver is well aware of the EDC Fulton Action. *See, e.g.*, Receiver's First Status Report, Oct. 20, 2024, Doc. 61 at 46 (noting Fulton County case); Receiver's Fourth Status Report, July 30, 2025, Doc. 220 at 31-32 (same).

Burkhalter on June 1, 2023 demanding they stop all fundraising using EDC's name. Thereafter, Burkhalter represented to EDC's counsel that Drive was no longer using EDC's name, but Mr. Embry continued to receive reports to the contrary. (Ex. 1, EDC Compl. ¶¶9-17.) Therefore, EDC filed the EDC Fulton Action seeking emergency injunctive relief to stop the unauthorized use of its name, damages under the Georgia Uniform Deceptive Trade Practices Act, and attorney's fees. Drive and Burkhalter filed an Answer and Third-Party Complaint asserting claims for breach of contract based on promissory notes whereby Drive loaned money to Mr. Embry.[2]

While the EDC Fulton Action was underway, the federal government was also investigating Drive and Burkhalter. On August 13, 2024, this Court entered an Order Appointing Receiver (Doc. 10) ("Receivership Order"). Thereafter, on September 30, 2024, the Fulton County Superior Court entered an order staying the case per the directive in the Receivership Order.[3]

According to the government, Burckhalter entered into loan agreements with EDC under which EDC would pay Drive 15% interest on the loaned funds.[4] Drive's

---

[2] *See* Answer, Defenses, Counterclaims, and Third-Party Claim of Defendants Drive Planning, LLC and R. Todd Burkhalter, filed Oct. 31, 2023 (attached as Exhibit 2); Third Party Complaint of Defendant Drive Planning, Inc., Oct. 31, 2023(attached as Exhibit 3); James Michael Embry's Answer to Third Party Complaint of Drive Planning, filed Dec. 4, 2023 (attached as Exhibit 4).

[3] *See* Final Order Staying Case, entered Sept. 30, 2024 (attached as Exhibit 5).

[4] *See* Criminal Information in *United States v. Burkhalter*, No. 1:26-cr-002-TRJ, filed Jan, 21, 2026 (Doc. 1 at ¶14), attached as Exhibit 6.

investors were not entitled to a percentage of the profits from EDC's projects. *Id.* The funds transferred to EDC pursuant to these loans came directly from Drive rather than an individual investor. *Id.* The government recognized that, consistent with the allegations in the EDC Fulton Action, Drive promoted its relationship with EDC because of EDC's good name and reputation as a "well-known multi-generational real estate developer in Atlanta." *Id.* at ¶16. At no point did the government allege that EDC or Mr. Embry knew of, engaged in, or benefited from Drive and Burkhalter's fraudulent conduct.

The Receiver acknowledged that these transfers were for loans, and reported to the Court that he was working with EDC and others regarding potential repayment of the loans –

> Embry Development Company ("Embry") is a well-known construction company that had a business relationship with Drive Planning. The Receiver's subpoena requested, inter alia, documents related to the loans from Drive Planning, communications between Embry and Drive Planning, and details of any financial agreements or joint ventures. The Receiver is negotiating with Embry for the repayment of the loans.[5]

Now, all of a sudden, the Receiver alleges that, in response to his request that EDC return the funds received pursuant to the promissory notes, EDC "failed and refused to return or account for" the funds and demonstrated a lack of good faith. (Compl.

[5] *See* Receiver's Second Status Report, Jan. 30, 2025, Doc. 84 at 15.

¶29.) The Receiver's status reports describe ongoing communications and negotiations between the Receiver and EDC that belie any such alleged refusal or failure to act in good faith.[6] It is the Receiver who failed to act in good faith when filing this Complaint against EDC, further victimizing and attempting to sully the good name and reputation of an Atlanta institution.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all factual allegations in the complaint as true, but it need not accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Thus "[t]o survive a motion to dismiss, plaintiffs must do more than state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms*., 372 F. 3d 1250, 1263 (11th Cir. 2004). More importantly, the duty to accept the facts in

[6] *See* Receiver's Fourth Status Report, July 30, 2025, Doc. 220 at 24 ("The Receiver engaged in extensive settlement negotiations and financial analysis regarding the transfer of these funds and their return to the Estate").

the complaint as true does not require the court to "ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir.2007).

"Because a plaintiff must prove the element of the transferor's fraudulent intent to succeed on an actual fraudulent transfer claim, and the transferee-defendant must know the particular circumstances of the fraud against which they are defending, the Court finds that application of Rule 9(b) is appropriate to Plaintiff's actual fraudulent transfer claim." *In re Aliera Companies, Inc.*, No. 21-11548 (TMH), 2025 WL 2599852, at *2, n.3 (Bankr. N.D. Ga. Sept. 8, 2025). *See also Endurance Am. Ins. Co. v. Bain Berkeley, Inc.*, No. 1:22-CV-1309-SEG, 2024 WL 6077886, at *13 (N.D. Ga. Mar. 21, 2024) (noting split within Eleventh Circuit about whether Rule 9(b) applies to fraudulent transfer claims, with the Northern District of Georgia finding that 9(b) applies to actual fraudulent transfer claims and the Southern District finding that it does not apply). To satisfy Rule 9(b), "a plaintiff must set forth 'the who, what, when[,] where, and how' circumstances of the fraud." *Id.* at *12.

## IV. ARGUMENT

### A. The January and February 2020 Transfers are Time-Barred.

GUVTA extinguishes claims for actual fraudulent transfer four years after the transfer or one year after discovery, and claims for constructive fraudulent transfer four years after the transfer with no discovery rule. O.C.G.A. § 18-2-79. The Court entered its Order Appointing Receiver on August 13, 2024, which tolled the statute of limitations for any claim accrued or accruing in favor of the Receivership Defendant during the period of the injunction set forth in the Order. (Doc. 10, ¶34.) Per Exhibit A, the Receiver alleges EDC received two wire transfers more than four years before the Order Appointing Receiver – a 1/10/20 wire transfer for $46,500 and a 2/19/20 wire transfer for $46,500. Claims for both transfers were extinguished under GUVTA before the tolling period began. The Receiver makes no allegations regarding application of the discovery rule as to these transfers for his actual fraudulent transfer claims. Therefore, the GUVTA claims for both actual and constructive fraud are extinguished for the 1/10/20 and 2/19/20 transfers and due to be dismissed.

Georgia applies a four-year limitations period to unjust enrichment under O.C.G.A. § 9-3-26, running from the date the benefit was received and/or retained. *Jysk Bed'N Linen v. Dutta-Roy*, 787 F. App'x 608, 612 (11th Cir. 2019). Therefore,

the Receiver's alternative claim for unjust enrichment as to the 1/10/20 and 2/19/20 wire transfers are time barred and also due to be dismissed.

**B. Count I – Actual Fraudulent Transfer Under GUVTA**

A claim for actual fraudulent transfer under O.C.G.A. § 18-2-74(a)(1) requires the plaintiff to allege that there was "(1) a transfer (2) made by the debtor (3) either before or after a creditor's claim against the debtor arose, and (4) the debtor's actual intent for making the transfer was to hinder, delay, or defraud a creditor." *In re Aliera*, 2025 WL 2599852, at *28.

To assist in the finding of an "intent to hinder, delay, or defraud," the statute lists a number statutory "badges of fraud." O.C.G.A. § 18–2–74(b). *Tindall v. H & S Homes, LLC*, 757 F. Supp. 2d 1339, 1350 (M.D. Ga. 2011). These badges of fraud are mere "circumstances, signs, marks, suspicions, not of themselves sufficient to authorize a finding [of fraud], unless more than one [are] combined." *Id.* (internal citations omitted). "[A] single badge of fraud may only create a suspicious circumstance and may not constitute the requisite fraud to set aside a conveyance; but several of them considered together may form a basis to infer fraud. Moreover, the factors listed in the statute are not the sole indicators of an intent to defraud. Fraudulent intent may be inferred from the totality of the circumstances." *Id.* at 1350–51.

"Because they are only evidence of the likelihood of fraud, badges of fraud are not given equal weight; and sometimes the circumstances indicate they should be given no weight at all." *In re Chin*, 492 B.R. 117, 131 (Bankr. E.D.N.Y. 2013).[7] "They must be judged in the context of other evidence and in light of what reasonable implications can be drawn from it in a particular case." *Geron v. Craig (In re Direct Access Partners, LLC)*, 602 B.R. 495, 544 (Bankr. S.D.N.Y. 2019).

***1. The Complaint Lacks Rule 9(b) Specificity.***

The Complaint contains none of the requisite specificity as to EDC. It alleges only that "[f]rom 2020 to 2024, Drive Planning transferred approximately $6,690,500.00 in investor-derived funds to Embry" and sues on that single aggregate figure. (Compl. ¶¶ 22, 26.) It identifies no specific transfer as fraudulent and alleges no fact about what EDC did or knew — only the statutory labels that EDC gave no value, did not act in good faith, and knew the funds originated from Drive. (Compl. ¶¶27,29.) Those labels are "not entitled to be assumed true," and once set aside, no factual matter about EDC remains.

What is left is guilt by association: because Drive ran a Ponzi scheme and Burkhalter pleaded guilty, every dollar EDC received must be fraudulent. (Compl. ¶31.) The court is "not required to admit as true th[e] unwarranted deduction of fact"

---

[7] The analysis of fraudulent transfer claims under GUVTA is substantially similar to Section 548 of the Bankruptcy Code. *In re Menser*, No. 18-65681-JWC, 2021 WL 4484894, at *3 (Bankr. N.D. Ga. Sept. 30, 2021).

that a scheme implicates each defendant. A*m. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010). Plausibility demands factual content allowing the inference that *this defendant*, not a scheme in the abstract, is liable. Because the Complaint pleads an actual-fraud claim without a single particularized circumstance of fraud as to EDC, it does not satisfy Rule 9(b), and Count One must be dismissed.

### ***2. Ponzi Scheme Presumption Does Not Save the Claims.***

The Receiver tries to fill the gap with the Ponzi-scheme presumption. (Compl. ¶ 31.) Under that presumption, transfers "made in furtherance of the scheme are presumed to have been made with the intent to defraud." *In re Aliera* 2025 WL 2599852 at *29 (citing *Perkins v. Haines*, 661 F.3d 623, 626 (11th Cir. 2011)). But the presumption reaches only transfers made "in furtherance of" the scheme. *In re ATM Fin. Servs., LLC*, No. 6:08-BK-969-KSJ, 2011 WL 2580763, at *5 (Bankr. M.D. Fla. June 24, 2011). A plaintiff "must show that each transfer was made in furtherance of the Ponzi scheme," because the inference arises only where the transfers "somehow perpetuated the debtor's Ponzi scheme"; "[t]ransfers made by the debtor unrelated to the Ponzi scheme do not warrant this inference," lest the presumption "swallow every transfer made by a debtor." *Id.* Establishing that a scheme existed does not establish that any particular transfer furthered it. *Id.* "When the transfer at issue was not made to Ponzi scheme investors, it is less clear the

presumption applies, and the movant must show the transfer somehow perpetuated or was 'in furtherance of' the Ponzi scheme." *Id.* at *4 n.19.

The Complaint does exactly what the presumption forbids: it pleads the scheme and Burkhalter's plea, then leaps to the conclusion that the entire $6,690,500 transferred to EDC was fraudulent. (Compl. ¶¶ 22, 31.) It alleges no fact showing that any payment to EDC "somehow perpetuated" the scheme and does not allege that EDC solicited investors or did anything to keep the scheme alive. In fact, the only available facts regarding the transfers as set forth in the EDC Fulton Action, Burkhalter's Criminal Information, and the Receiver's own Status Reports to this Court refute that the transfers were in furtherance of the scheme. Instead, the transfers were loans, paid directly by Drive and not from any individual investor, made pursuant to promissory notes with an expected 15% interest rate as a return.[8] There is no basis to conclude that an arm's length transaction whereby the debtor loans money in exchange for a reasonable rate of interest was in furtherance of the Ponzi scheme.

### 3. *There are No Badges of Fraud.*

Stripped of the presumption, the Receiver fails to plead any facts to demonstrate any badges of fraud in support of his claim for actual fraudulent transfer.

[8] *See* notes 1-5 *supra* and accompanying text for citations to the EDC Fulton Action pleadings, Burkhalter's Criminal Information, and the Receiver's Second Status Report.

The Receiver alleges no badges of fraud as to EDC – no insider status, no retained control, no concealment. In fact, the available record shows the opposite. Drive sent wire transfers pursuant to promissory notes under which it would receive back the principal plus 15% interest. The Receiver himself characterized the transfers as loans from Drive to EDC.[9] Moreover, at least one entry in the Receiver's list of alleged transfers shows a credit to Drive's account via an incoming wire from EDC on 12/17/20, which means a payment was made on the note(s). (Compl. Ex. A.) The Complaint also identifies at least one of the transfers, an 11/4/21 wire, for a "NEW NOTE." (*Id.*) The Receiver's own reports and his Complaint undercut his claim of fraudulent transfer because the promissory notes were not to hinder, delay, or defraud a creditor. *See, e.g.*, *In re Aliera*, 2025 WL 2599852, at *32.

### C. Count II – Constructive Fraudulent Transfer Under GUVTA

To state a claim under O.C.G.A. § 18-2-75(a) for a constructive fraudulent transfer, a plaintiff must show that "(1) there was a transfer made by a debtor, (2) there was a creditor whose claim arose before the transfer was made, (3) reasonably equivalent value was not received for the transfer, and (4) debtor was insolvent at the time or became insolvent as a result of the transfer." *See* O.C.G.A. § 18-2-74(a)(2); *In re Aliera*, 2025 WL 2599852, at *27.

---

[9] *See* notes 1-5 *supra* and accompanying text for citations to the EDC Fulton Action pleadings, Burkhalter's Criminal Information, and the Receiver's Second Status Report.

"To plead a lack of reasonably equivalent value 'the plaintiff must present some information about the value the debtor received in exchange for the transfer.'" *In re Menser*, 2021 WL 4484894, at *6 (citations omitted). "It is insufficient to simply allege the statutory elements of a constructive fraud claim." *Id.* "[T]he question of whether a debtor received reasonably equivalent value for a transfer is ultimately a question of fact is correct, but the trustee must still allege facts sufficient to pass muster at the pleading stage." *In re Aliera*, 2025 WL 2599852 at *27.

More importantly, "[f]or purposes of a constructive fraudulent transfer claim, reasonably equivalent value is based on the objective value of the goods and services received, regardless of 'the impact that the goods and services had on the [debtor].'" *Id.* at *28 (citations omitted) (agreeing with defendants' argument that "where a transaction was made at arm's length the transaction was made for reasonably equivalent value, regardless of whether the debtor was a Ponzi entity"). GUVTA defines value to include satisfaction of an antecedent debt: "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." O.C.G.A. § 18-2-73. The value inquiry does not require a dollar-for-dollar exchange. *In re Northlake Foods, Inc.*, 715 F.3d 1251, 1254, 1257 (11th Cir. 2013). The law does not authorize voiding a transfer that confers an economic benefit on the debtor. *Id.* at 1255-56.

Here too, the Receiver fails to plead any facts specific to EDC, instead relying on formulaic recitations of the statute regarding the lack of reasonably equivalent value. The Complaint recites that Embry "did not provide reasonably equivalent value to Drive Planning" and that the funds "were not repayment of any legitimate debt," but pleads no facts about the parties' dealings – no description of what Embry gave, no comparison of what was transferred against what was received. (Compl. ¶¶40-46.) That alone dooms the claim.

But there's more – the Receiver's own prior reports, the Criminal Information describing Burkhalter's conduct, and the Complaint refutes his claim.[10] The funds transferred were loans paid pursuant to promissory notes that EDC was required to repay. Moreover, at least one such repayment is reflected in the Complaint at Exhibit A. Clearly, the transfers conferred an economic benefit on Drive in the form of a 15% return. There is no basis to credit the Receiver's bare allegation that the transfers lack reasonably equivalent value. *See In re Northlake Foods, Inc.*, 715 F.3d at 1256-57 (affirming dismissal where the complaint and its exhibits showed the debtor received reasonably equivalent value in satisfaction of an antecedent obligation, giving "no weight" to a "conclusory allegation" of inadequate consideration).

---

[10] *See* notes 1-5 *supra* and accompanying text for citations to the EDC Fulton Action pleadings, Burkhalter's Criminal Information, and the Receiver's Second Status Report.

### D. Count II – Unjust Enrichment Under Georgia Common Law

A claim for unjust enrichment requires a plaintiff to allege facts showing that he conferred a direct benefit the defendant knew of and accepted or retained under circumstances making retention inequitable. *Miller v. NextGen Healthcare, Inc.*, 742 F. Supp. 3d 1304, 1315 (N.D. Ga. 2024).

Here too, the Receiver restates the elements of the claim and nothing more, alleging that Drive Planning "conferred a substantial benefit" that Embry "received and accepted" and "must disgorge," with no facts about what Embry did with the funds or why retention would be inequitable. (Compl. ¶¶55-64, 69.) These conclusory allegations are insufficient to state a claim.

Moreover, "[w]here a valid contract exists, unjust enrichment claims are barred as a matter of law." *Cobra Tactical, Inc. v. Payment All. Int'l Inc.*, 315 F. Supp. 3d 1342, 1349 (N.D. Ga. 2018) (granting motion to dismiss unjust enrichment claim). The transfers at issue were made pursuant to promissory notes and are governed by the terms of any such note as set forth in the Receiver's Complaint. (*See, e.g.*, Compl., Ex. A.) Therefore, his unjust enrichment claims fails as a matter of law and must be dismissed.

## V. CONCLUSION

For the foregoing reasons, EDC respectfully requests that the Receiver's Ancillary Complaint be dismissed in its entirety for failure to state a claim.

Dated: October 2, 2026

*/s/ Lauren A. Warner*

Lauren A. Warner | GA Bar No. 425769
Scott R. Grubman | GA Bar No. 317011
Brittany M. Cambre | GA Bar No. 350793
1834 Independence Sq.
Atlanta, GA 30338
P: (404) 233-4171
F: (404) 261-2843
lwarner@gwbfirm.com
sgrubman@gwbfirm.com
bcambre@gwbfirm.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on October 2, 2026, I electronically filed the foregoing Motion To Dismiss Receiver's Ancillary Complaint through CM/ECF, which will automatically send e-mail notifications of such filing to all attorneys of record.

*/s/ Lauren A. Warner*
Lauren A. Warner